The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Lorrie L. Dollar. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award.
* * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following which were entered into by the parties at the hearing as
STIPULATIONS
1. The parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act and the employment relationship existed between the parties from April 4, 1992 through November 14, 1992 and from May 22, 1993 through January 29, 1994.
2. ITT Hartford was the carrier on the risk.
3. The parties stipulated 11 pages of medical reports into the record, with plaintiff's pay records.
4. The issue for determination is whether the plaintiff sustained a compensable occupational disease.
5. If the claim is found to be compensable, the plaintiff seeks only medical compensation for the treatment of her right hand.
* * * * * * * * * * *
The Full Commission adopts the findings of fact found by the Deputy Commissioner as follows:
FINDINGS OF FACT
1. At the time of the hearing, the plaintiff was a 23-year-old female high school graduate who was right hand dominant. She was beginning her second year of classes at the College of the Albemarle, where she was pursuing a 2-year prelaw degree.
2. Prior to her employment with defendant, the plaintiff was employed on a full-time basis in 1989 with Highland Data Services, where her duties involved data entry. The plaintiff worked as a waitress for a number of months before and after the data entry job. In 1990, she worked for two months at George Chevrolet, performing general clerical duties, including making copies, mailing bills, and answering the telephone. Plaintiff worked as a cashier at the Red Apple convenience store for two months.
3. For her first month of employment with defendant, plaintiff worked as a greeter, where her duties required her to stand at the door and welcome customers. From May until November of 1992, the plaintiff worked as a cashier, where her duties involved ringing up sales and refunds, preparing warranties, helping sales staff and setting up displays. The plaintiff quit work when her husband was hired by defendants.
4. In May of 1993, the plaintiff was rehired by defendants as a night sales clerk. Her duties included changing car batteries, stocking and cleaning the store, checking alternators, and doing call-backs for the manager on defective items. From September of 1993 through January of 1994 the plaintiff worked as a cashier. The plaintiff also did some data entry work. During her employment with defendant, she worked from 8 to 30 hours per week, with her average number of hours worked per week being thirteen hours.
5. The plaintiff was paid $5.00 per hour.
6. The plaintiff was terminated on January 29, 1994 due to unexcused absences not related to this claim.
7. The plaintiff noticed numbness and tingling in her right hand in September of 1993.
8. The plaintiff first sought medical treatment for her right hand on April 11, 1994 from orthopaedic surgeon Dr. James Watson. The initial examination revealed no decreased sensitivity, no motor weakness, no atrophy, and no Tinel's sign. Dr. Watson ordered nerve conduction velocity tests, which were reported back as borderline for carpal tunnel syndrome.
9. On April 26, 1994 testing and evaluation by Dr. Watson were within normal range. Dr. Watson referred plaintiff to neurologist Dr. Lloyd Hitchings.
10. On July 6, 1994 the plaintiff was seen by Dr. Hitchings at which time she complained of having numbness and symptoms for six months. Dr. Hitchings diagnosed plaintiff with very mild carpal tunnel syndrome, and he prescribed a wrist splint and six days of prednisone.
11. On July 19, 1994 the plaintiff presented to Dr. Hitchings with complaints of the medication and of her hand becoming more tingly.
12. On September 13, 1994 plaintiff returned to Dr. Watson, where a slightly positive Tinel's sign was noted. Dr. Watson last saw plaintiff on December 20, 1994.
13. In 1986 or 1987 the plaintiff suffered vertebral fractures at the L1-L3 and L4 levels when she jumped from a second story window. She also fractured ribs and had a collapsed lung in the fall.
14. In 1992 the plaintiff had a full term pregnancy which resulted in the live birth of a female child. Prior to 1992 the plaintiff had five miscarriages from 1989 through 1990.
15. In November of 1993 the plaintiff was involved in an automobile accident which resulted in a neck injury which was treated in the emergency room of Chowan Hospital.
16. The plaintiff had a broken fourth finger on her right hand at age 13 when she punched a wall.
17. In 1989 the plaintiff was involved in an automobile accident which resulted in a right dislocated collarbone. The plaintiff was treated at Chowan Hospital for the injury.
18. During her college career, the plaintiff has taken tennis and bowling classes to meet the physical education requirements. She has also completed English, Algebra, and computer classes.
19. The plaintiff completed the bowling class during the winter quarter from December of 1993 to February 1994, with two classes per week, one and one-half hours per class. The plaintiff used her right hand to bowl with an eight-pound ball.
20. Dr. Watson has opined that, based upon the fact that plaintiff was a part-time employee performing cashier work at defendant-employer, he was unable to attribute plaintiff's condition to her work.
21. On August 8, 1994, in response to a request from the plaintiff, Dr. Hitchings advised that he could not definitely relate plaintiff's condition to her work. While Dr. Hitchings opined that plaintiff's job may have been a contributing factor to the plaintiff's symptoms, he indicated that based upon the fact that plaintiff worked, on average, 13 hours per week with defendant and was not performing computer work the entire shift, he was less of the opinion that plaintiff's work had caused the problem. Furthermore, Dr. Hitchings noted that when the hand movements ceased, one would expect the carpal tunnel syndrome to improve. However, Dr. Hitchings saw plaintiff about five months after she left defendant-employer, and at that time plaintiff related a history of her hand symptoms getting worse over the last six months.
22. Defendant-employer had no employees with wrist or hand complaints like those voiced by plaintiff, even among full-time workers.
* * * * * * * * * * *
Based upon the finding of fact, the Full Commission concludes as follows:
CONCLUSIONS OF LAW
1. The plaintiff has failed to carry the burden of proof to establish that she has a compensable occupational disease. In order to establish the existence of a compensable occupational disease, a claimant must prove that the diseases characteristic of a trade or occupation, the disease is not an ordinary disease of life to which the public is equally exposed outside of the employment, and there must be proof of a causal connection between the disease and the employment. N.C.G.S. § 97-53 (13); Hansel v.Sherman Textiles, 304 N.C. 44, 283 S.E.2d 101 (1981).
2. In this case, the plaintiff has failed to establish that the right-hand condition was characteristic of her employment. Furthermore, the plaintiff has offered no evidence to establish that she was at a greater risk for contracting carpal tunnel syndrome than the general public due to her job. Lastly, competent medical evidence does not provide the necessary causal relationship between plaintiff's job and the carpal tunnel syndrome.
* * * * * * * * * * *
Based on the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
AWARD
1. Plaintiff's claim is, and under the law must be DENIED.
2. Each side shall pay its own costs.
 S/ ___________________________ COY M. VANCE COMMISSIONER
CONCURRING:
S/ _______________________ THOMAS J. BOLCH COMMISSIONER
S/ _______________________ WILLIAM L. HAIGH CHIEF DEPUTY COMMISSIONER
CMV/cnp/mj 11/15/95